UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MICHELLE WATKINS, | Case No. 4:19-cv-1807 |
| Plaintiff, | Judge J. Philip Calabrese |
| v. | |
| CORECIVIC OF TENNESSEE, LLC, | |
| Defendant. | |

## OPINION AND ORDER

Defendant CoreCivic of Tennessee, LLC terminated Plaintiff Michelle Watkins for violating its "zero tolerance" sexual-harassment policy. Ms. Watkins believes, however, that CoreCivic fired her because of her sex in violation of Title VII of the Civil Rights Act of 1964. Because there is no genuine dispute of material fact that Ms. Watkins fails to make a prima facie showing of sex discrimination or otherwise show pretext, the Court **GRANTS** Defendant's motion for summary judgment.

## BACKGROUND

Michelle Watkins worked for thirteen years as a correctional officer for CoreCivic, a private-prison management company that operates the Northeast Ohio Correctional Center in Youngstown, Ohio. (ECF No. 31-1, PageID #239; ECF No. 1.) CoreCivic has a sexual-harassment policy, which prohibits the sexual harassment of co-workers and specifically prohibits "verbal or physical contact of a sexual nature that creates an intimidating, hostile, or offensive workplace." (ECF No. 31-1, PageID #364.) Ms. Watkins understood this as a "zero tolerance" policy, meaning a violation

could result in her termination. (*Id.*, PageID #244–45.) In this regard, CoreCivic provided training to its employees, including Ms. Watkins. (*Id.*)

### A. Sexual-Harassment Complaint

On February 23, 2018, Ms. Watkins was working an overtime shift at a post called Central Control with two other correctional officers, Ashley Bone and Rachel Grant. (*Id.*, PageID #413.) According to Ms. Watkins, the three of them were in Central Control when Bone began discussing her romantic relationship with another correctional officer. (*Id.*, PageID #256.) Ms. Watkins remembers Bone saying that the officer with whom she was involved kept "chasing" her and "trying to reach out to her." (*Id.*) Ms. Watkins replied, "You must have something that makes him come back. You must have something that he wants." (*Id.*, PageID #256, 413.) When Bone asked what she meant, Ms. Watkins referred to Bone's vagina, saying, "Oh, you must have a magical who-ha. You must have a who-ha that sings to him like the sirens do." (*Id.*) Ms. Watkins then sang, "la-la-la," to demonstrate how a siren would sing. (*Id.*) Ms. Watkins also made comments about Bone's sexual propensity, saying, "You're a beautiful-looking girl and could probably have any guy you want. When I was younger, I was a good looking girl as well. And I had plenty of dates and did lots of things on those dates. And I don't blame you for doing what you're doing. Go out and have fun." (*Id.*, PageID #256.)

Bothered by those comments, Bone later described the incident to her shift supervisor, Correctional Officer Sharonna Whipple, who directed her to human resources. (*Id.*, PageID #415.) On February 26, 2018, Bone visited Human Resources

2

Assistant Judi Croft to report the incident. (*Id*.) During this meeting, Bone reported that Ms. Watkins made "inappropriate comments of a sexual nature towards her." (*Id*.) Bone then met with Chief of Security David Yemma and Assistant Chief of Security Jennifer Frazzini to discuss the allegations further. (ECF No. 31-3, ¶¶ 4–5, PageID #459.) Yemma instructed Bone to prepare a written statement, which she submitted on March 22, 2018, detailing the sexually inappropriate comments that Ms. Watkins made and Grant witnessed. (*Id.,* ¶ 6, PageID #460; ECF No. 31-1, PageID #416, 419.)

On March 24, 2018, Officer Grant also provided a written statement. (ECF No. 31-1, PageID #268, #415 & #42.) In her statement, Grant, who witnessed the incident, corroborated Bone's allegations of sexual harassment. (*Id*.). Grant reported that Ms. Watkins (1) told Bone she must have a whistle on her vagina; (2) sang a song about Bone's vagina; (3) asked Bone how she performs sexually; and (4) asked Bone to teach Plaintiff how to perform sexually. (*Id*.).

Ms. Watkins provided her own written statement to Yemma on March 26, 2018. (*Id.*, PageID #422). In her statement, Ms. Watkins admitted to many of Bone's and Grant's allegations. (*Id*.) For example, Ms. Watkins conceded that (1) she told Bone that she must have something that keeps a man coming back; (2) she told Bone she has a "magical who-ha" that "sings like a siren"; and (3) "probably sang a little song about [Bone's vagina]." (*Id*.)

3

## B. Investigation and Termination

On April 3, 2018, Warden Christopher LaRose ordered an internal investigation. (ECF No. 31-2, ¶ 10, PageID #456; ECF No. 31-3, ¶ 8, PageID #460.) Facility Investigator Sean Daugherty was tasked with investigating and preparing a report. (ECF No. 31-2, ¶ 10, PageID #456.) As part of his investigation, Daugherty reviewed numerous documents including the written statements of Bone, Grant, and Watkins and interviewed each of them as well as Yemma, Croft, and Whipple. (ECF No. 31-1, PageID #413–17.)

After Daugherty completed his investigation, he determined that both Ms. Watkins and Grant corroborated Bone's allegations. (*Id.*, PageID #417.) In particular, he found that Ms. Watkins told Bone, referring to her vagina, "You must have a magical hoo-ha. It must sing like a siren." (*Id.*) Further, Daugherty found that, although Ms. Watkins denied singing a song about Bone's vagina during his interview with her, she previously admitted in her written statement that she "probably sang a little song about it, which sounds like something I'd do." (*Id.*)

Daugherty sent his report to Managing Director of Operations David Berkebile, Warden LaRose, and members of CoreCivic's human resources and legal departments. (ECF No. 31-2, ¶ 11, PageID #456; ECF No. 31-4, ¶ 5, PageID #463.) Warden LaRose and Berkbile agreed that Ms. Watkins's employment should be terminated for violating the sexual harassment policy. (ECF No. 31-2, ¶ 13, PageID #456; ECF No. 31-4, ¶ 7, PageID #463.)

4

On August 7, 2018, Ms. Watkins met with Warden LaRose and a human resources officer. (ECF No. 32, PageID #446, 470–71.) Ms. Watkins received a "Problem Solving Notice" and an accompanying letter signed by Warden LaRose, terminating Ms. Watkins and identifying the reasons for her termination. (ECF No. 31-1, 271, 427–28). The notice stated that Ms. Watkins violated "Rule 1.3: Violating CoreCivic non-discrimination/non-harassment policies and Rule 5: Misconduct Related to Job Performance." (*Id.*, PageID #427.)

### C. Legal Proceedings

Ms. Watkins filed an administrative complaint with the Equal Employment Opportunity Commission on October 10, 2018, alleging that CoreCivic discriminated against her because of her gender and age in violation of Title VII and the Age Discrimination in Employment Act. (ECF No. 35-3, PageID #775). On June 6, 2019, the EEOC closed Ms. Watkin's case and issued a right-to-sue letter. (ECF No. 35-6.) Notably, the letter listed only the age-discrimination claim under the ADEA, not the Title VII claim. (*Id.*)

After the EEOC closed Ms. Watkins's case, she filed suit in federal court, again alleging that CoreCivic engaged in gender and age discrimination when it terminated her, in violation of Title VII and the ADEA. (ECF No. 1.) Ms. Watkins then withdrew her age-discrimination claim, with the Court's approval. (ECF No. 26.)

Defendant moves for summary judgement, arguing that Plaintiff (1) failed to exhaust her administrative remedies because the right-to-sue letter listed only her ADEA claim, (2) failed to present any direct evidence of discrimination or any

5

evidence that CoreCivic treated any "similarly-situated" male employees more favorably than her, and (3) even if she did make prime facie showing of sex discrimination, Defendant presented a legitimate non-discriminatory reason for termination, which Plaintiff fails to rebut as pretextual. (ECF No. 31, PageID# 195.)

## ANALYSIS

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view evidence in the light most favorable to the non-moving party. *Kirilenko-Ison v. Board of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Summary judgment is appropriate if the nonmoving party fails to establish "an element essential to that party's case and upon which that party will bear the burden of proof at trial." *Tokmenko v. MetroHealth Sys.*, 488 F. Supp. 3d 571, 576 (N.D. Ohio Sept. 21, 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

"The party seeking summary judgment has the initial burden of informing the court of the basis for its motion" and identifying the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (citing *Celotex Corp.*, 477 U.S. at 322). Then, the nonmoving party must "set forth specific facts showing there is a genuine issue for trial." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "When the moving party has carried its burden under

Rule 56(c), its opponent must do more than show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

If a genuine dispute exists, meaning "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment is not appropriate. *Id.* However, if "the evidence is merely colorable or is not significantly probative," summary judgment for the movant is proper. *Id.* The "mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson*, 477 U.S. at 247–48). It is not the Court's duty to search the record; instead, the parties must bring those facts to the Court's attention. *See Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996). Ultimately, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251.

I. **Administrative Exhaustion**

Defendant argues that Plaintiff failed to exhaust her administrative remedies because the EEOC right-to-sue letter does not list Plaintiff's Title VII claim. The right-to-sue letter states: "The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court WITHIN 90 DAYS of the receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost." (ECF No. 31-1, PageID #346.) The Court construes the letter to apply to both of Plaintiff's claims because it states that "the EEOC is closing your case." (*Id.*) Therefore, Plaintiff exhausted her administrative remedies.

7

## II. Sex Discrimination

Title VII prohibits employers from taking adverse employment actions because of sex. *See* 42 U.S.C. § 2000e–2(a). This statute requires proof according to traditional principles of but-for causation. *University of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). Under this standard, the law does not regard an act as a cause of an event if the particular event would have occurred without the act. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176–77 (2009) (citations omitted). Because events may have multiple but-for causes, a Title VII defendant cannot avoid liability by merely citing a permissible factor that contributed to the challenged employment decision. *Burrage v. United States*, 571 U.S. 204, 211–12 (2014); *Nassar*, 570 U.S. at 350. Liability depends on whether an employee's sex "actually motivated the employer's decision" and "had a determinative influence on the outcome." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993).

To demonstrate impermissible sex discrimination, a plaintiff may put forward direct evidence or rely instead on inferential or circumstantial evidence. In this case, Plaintiff takes the latter approach. Where a claim builds on circumstantial evidence, courts use the familiar three-step *McDonnell Douglas* burden shifting framework to determine the propriety of summary judgment. *See Hunter v. General Motors LLC*, 807 F. App'x 540, 543 (6th Cir. 2020) (citing *Peeples v. City of Detroit*, 891 F.3d 622, 633 (6th Cir. 2018)); *Gunn v. Senior Servs. of N. Ky.*, 632 F. App'x 839, 843 (6th Cir. 2015). *First*, the plaintiff must establish a prima facie case of discrimination. *Second*, the burden shifts to the defendant to articulate a legitimate, non-discriminatory

8

reason for the adverse employment action. *Third*, the plaintiff must demonstrate the stated justification is merely pretext. *Gunn*, 632 F. App'x at 843.

### II.A. Prima Facie Case

To establish a prima facie case of sex discrimination, the plaintiff must present circumstantial evidence that (1) she is a member of a protected class; (2) suffered an adverse employment action; (3) was qualified for the position in question; and was (4) replaced by a person outside the protected class or was treated differently than similarly situated, non-protected employees. *Wright v. Murray Guard, Inc.,* 455 F.3d 702, 707 (6th Cir. 2006). Here, Defendant concedes that Plaintiff satisfies the first three elements and challenges only the fourth element—that Plaintiff was treated differently than similarly situated non-protected employees. Therefore, Plaintiff must show that a similarly situated employee outside the protected class was treated more favorably. *See Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 731 (6th Cir. 2004) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

Typically, the plaintiff is similarly situated to other employees who "dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Noble*, 391 F.3d at 729 (citing *Mitchell*, 964 F.2d at 583). Where the above factors do not appear appropriate, courts need not to consider them. In such instances, courts "make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the proposed comparable employee." *Wright*

9

*v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006) (quotation omitted). While an exact correlation is not required, "the employee with whom the plaintiff seeks to compare himself . . . must be similar in all of the relevant aspects." *Noble*, 391 F.3d at 729 (citing *Ercegovich v. Goodyear*, 154 F.3d 344, 352 (6th Cir. 1998)).

Plaintiff argues that she was treated differently than three CoreCivic employees, who she claims were similarly situated: (1) former Correctional Officer Robert Miller, (2) former Senior Correctional Officer Bruce Cuevas, and (2) former Chief of Security James Codner III. Review of the record establishes that there is no genuine dispute that Plaintiff was not similarly situated to or treated differently than these individuals.

### II.A.1. Former Correctional Officer Miller

Plaintiff compares herself to former Correctional Officer Robert Miller and argues that she was treated differently. (ECF No. 34, PageID #671–72.) The record reflects that Miller persistently asked a coworker on a date and "made inappropriate comments about her to coworkers that made her feel uncomfortable." (ECF No. 35-8, PageID #849.) Indeed, Miller is similarly situated to Plaintiff, but for reasons that Plaintiff overlooks and that do not help her. The record reflects that Miller was also terminated for this conduct under the sexual harassment policy. (ECF No. 31-2, ¶ 14, PageID #456.) Therefore, Plaintiff fails to create a genuine dispute that Miller was treated differently.

### II.A.2. Former Senior Correctional Officer Bruce Cuevas

Next, Plaintiff argues that former Senior Correctional Officer Bruce Cuevas was similarly situated and treated more favorably than her. Specifically, Plaintiff argues that an investigation contemporaneous with Plaintiff's resulted in a three-day suspension for Cuevas. (ECF No. 34, PageID #673.) But Cuevas and Plaintiff are not similarly situated. Cuevas was neither investigated for sexual harassment, nor found to have violated Defendant's sexual-harassment policy. (ECF No. 31-2, ¶ 9; ECF No. 35-8, PageID 847–48.) Cuevas was disciplined for "an inappropriate use of company email" and failing to report to human resource his suspected platonic relationship with a subordinate co-worker, as required by company policy. (*Id.*) Therefore, Cuevas is not similarly situated to Plaintiff.

### II.A.3. Former Chief of Security James Codner III

Finally, Plaintiff claims that Defendant treated former Shift Supervisor James Codner III more favorably than her. (ECF No. 34, PageID #673.) On July 24, 2012, Defendant disciplined Codner "for making statements about another supervisor that others perceived as being disrespectful and degrading and for having a conversation of a sexual nature with the other supervisor which the other supervisor found to be disrespectful." (ECF No. 35-9, PageID #885.) Ultimately, Defendant issued Codner a written reprimand. (*Id.*)

Given the nature of Codner's conduct, there is no dispute that Plaintiff and Codner were treated differently. But there are important distinguishing factors that show that they are not similarly situated. First, there is a six-year gap between

11

Plaintiff's termination in 2018 and Codner's discipline in 2012, making the incidents too far removed in time to support a circumstantial case of discrimination. *See, e.g.*, *Tribble v. Memphis City Sch.*, No. 05-6166, 193 F. App'x 401, 407 (6th Cir. Aug. 21, 2006) (recognizing that plaintiff and alleged comparable were not similarly situated where the alleged comparator's behavior "took place during a different time frame, in a different school, with a different principal, and under a different director"); *Bertram v. Medina Cnty.*, No. 1:07-CV-02460, 2008 U.S. Dist. LEXIS 29157, at *17 (N.D. Ohio Apr. 9, 2008) (finding that plaintiff-correctional officer and proposed comparator were not similarly situated where five years separated the incidents involving plaintiff and the proposed comparator).

Second, the disciplinary authorities were different. Former Warden Michael Pugh disciplined Codner, not Warden LaRose. Neither Warden LaRose nor Managing Director Berkebile were in their leadership roles in 2012 and took no part in the decision to discipline Codner. (ECF No. 31-2, ¶¶ 2, 15, PageID #454,456; ECF No. 31-4, ¶ 2, PageID #462.) The Court finds that these material distinctions signal that the investigations and disciplinary decisions at issue were not conducted under the same decision-making authority and processes such that the two are not similarly situated. *See Walker v. Ohio Dep't of Rehab. & Corr.*, No. 06-3900, 241 F. App'x 261, 267 (6th Cir. July 11, 2007) (agreeing that "where the court is asked to compare impositions of discretionary discipline in response to fact-specific abuses of authority, the identity of the supervisor is surely a relevant consideration"); *King v. Ohio*, 2:05-CV-966, 2009 U.S. Dist. LEXIS 1214, at *36 (S.D. Ohio 2009) (finding plaintiff-

correctional officer and proposed comparator-correctional officer not similarly situated because they received discipline from different wardens).

*   *   *

Plaintiff fails to proffer evidence to create a genuine issues of material fact that she was treated differently than similarly situated CoreCivic employees in all relevant respects. Therefore, she has not met her burden to establish a prima facie case of sex discrimination.

### II.B. Pretext

Even if Plaintiff could carry her burden to make out a prima facie case, there is no genuine dispute of material fact that CoreCivic's zero-tolerance policy does not amount to a pretext for discrimination on the basis of sex. "[I]n evaluating pretext and the plaintiff's ultimate burden, the court should consider all probative evidence in the light most favorable to the plaintiff." *Jackson v. VHS Receiving Hosp., Inc.*, 814 F.3d 769, 779 (6th Cir. 2016) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). Still, to avoid summary judgment, a plaintiff "must produce sufficient evidence from which a jury could reasonably reject [the employer's] explanation of why it fired her." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (citations omitted).

A plaintiff can show pretext in three interrelated ways, by demonstrating that an employer's proffered reason for firing her: (1) has no basis in fact; (2) did not actually motivate the employer's actions; or (3) was insufficient to motivate the employer's actions. *Miles v. South Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 888

13

(6th Cir. 2020). Defendant seeks summary judgment based on its honest belief in the proffered reason for the termination of Ms. Watkins. The honest-belief rule examines whether the defendant reasonably and honestly believed its non-discriminatory reason for taking an adverse employment action. *See McLaughlin v. Fifth Third Bank, Inc.*, 772 F. App'x 300, 302–03 (6th Cir. 2019). "[T]he key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Id.* (quoting *Smith*, 155 F.3d at 807) (cleaned up).

To overcome an employer's honest belief, an employee "must allege more than a dispute over the facts upon which the discharge was based." *Id.* (quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001)). Instead, a plaintiff must provide "sufficient evidence to establish that the employer failed to make a reasonably informed and considered decision before taking its adverse employment action, thereby making its decisional process unworthy of credence, then any reliance placed by the employer in such a process cannot be said to be honestly held.'" *Id.* (quoting *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 708 (6th Cir. 2006)).

Based on the summary-judgment record, there is no genuine dispute of material fact that CoreCivic conducted a reasonable investigation and, on the basis of that investigation, made a reasonably informed and considered decision before terminating Ms. Watkins. A neutral official conducted an internal investigation that involved reviewing the written statements of each witness and interviewing each witness plus three other individuals. This investigation resulted in a report, based on which Warden LaRose and Berkbile agreed that Plaintiff should be terminated

14

under CoreCivic's zero-tolerance policy. Plaintiff has not come forward with evidence undermining the credence of this decisional process.

To rebut the evidence of Defendant's honest belief, Plaintiff relies on the testimony of Ms. Watkins. (ECF No. 34, PageID #675.) But Plaintiff "cannot defeat [Defendant's] honest belief" about the reason for her termination "simply through her own contrary assertions[.]" *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 599 (6th Cir. 2007) (citing *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001)). Accordingly, the record does not allow a reasonable jury to find in favor of Plaintiff on the issue of pretext, even if she carried her burden to establish a prima facie of sex discrimination.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion for summary judgment.

**SO ORDERED.**

Dated: December 27, 2021

J. Philip Calabrese
United States District Judge
Northern District of Ohio